**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SHIFRAH YOCHEVED YISRAEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  23-cv-01454 (APM) |
| | ) | |
| DEPARTMENT OF LABOR, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OPINION**</u>

This matter is before the Court on Defendant Department of Labor's Motion to Dismiss the amended complaint, ECF No. 15, and Plaintiff Shifrah Yisrael's motion for Leave to Amend the Complaint, ECF No. 20, and Request for Court Appointed Legal Counsel, ECF No. 21.  For the reasons discussed below, the court denies Plaintiff's motion to amend the complaint, grants Defendant's motion to dismiss, and denies as moot Plaintiff's motion for appointment of counsel.

**I.**

Plaintiff, formerly known as Cat Portal, began her employment with the U.S. Department of Labor, Bureau of Labor Statistics, on March 1, 1987.  *See* Am. Compl., ECF No. 6, at 2; Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 19 [hereinafter Pl.'s Opp'n], at 2.[1]  Plaintiff's workplace attendance and use of leave became issues of such significance that they triggered disciplinary action.

By letter dated March 2, 2011, Plaintiff's former supervisor ordered Plaintiff's immediate return to work and warned Plaintiff, having been absent since February 25, 2011, that she would be charged absent without leave (AWOL) if she failed to comply.  *See* Pl.'s Reply to Objections

---

[1]  Page numbers are those designated by CM/ECF.

to Def.'s Mot. to Dismiss, ECF No. 24 [hereinafter Surreply], Ex., ECF No. 24-1 [hereinafter Surreply Ex.], at 32–33.  Plaintiff did not return, and following her unexcused absence from March 4, 2011, through March 25, 2011, Defendant issued a Notice of Official Reprimand charging Plaintiff with AWOL.  *See id.* at 67–68.  Defendant issued a Notice of Proposed Removal on July 6, 2011, citing Plaintiff's unexcused absence from work from February 25, 2011, through June 17, 2011.  *See* Def.'s Mot. to Dismiss, Ex. A, Merit Systems Protection Board Initial Decision, ECF No. 15-2 [hereinafter MSPB Initial Decision], at 3, 9.  Ultimately, Defendant removed Plaintiff effective August 8, 2011, after having "sustained the charges of failure to follow leave procedures (53 specifications) and absence without leave (AWOL) (480 hours, 60 consecutive days) as set forth in the Notice of Proposed Removal[.]"  *Id.* at 2–3.[2]

Plaintiff faults Defendant for having taken "severe disciplinary action against an employee [who] had an unexpected, unexplained crisis that was not anticipated."  Surreply at 3.  Plaintiff alleges that "unexpected challenges arose in 2010 that led to private issues that [were] not shared with anyone at the workplace."  Pl.'s Opp'n at 2.  At the time of her termination, Plaintiff claims to have been "under the care of specialists at George Washington University Hospital [who] prohibited [her] return to the workplace due to complete incapacitation."  Am. Compl. at 2.  She alleges she supplied "medical documentation" to justify her inability to return to work, *id.* at 3; *see also* Pl.'s Opp'n at 3, yet Defendant denied her requests "to work from home or to reduce the work schedule," Pl.'s Opp'n at 3; *see* Am. Compl. at 3; Surreply at 1, as well as her requests for transfer, *see* Am. Compl. at 3, and temporary detail, *see* Pl.'s Opp'n at 2.

---

[2] Plaintiff claims not to have had notice of her proposed and actual removal until November 2011, *see* Pl.'s Opp'n at 3–4, and thus was unable to respond, *see id.* at 4, or dispute "the claim of the 'abandonment of the position,'" Surreply at 2.  But Plaintiff's receipt of the Notice of Proposed Removal and decision letter "was litigated before an arbitrator" who, after a hearing, concluded "the agency sent [Plaintiff] both documents by USP to [Plaintiff's] last known address [and that Plaintiff] refused delivery[.]"  MSPB Initial Decision at 10.  The arbitrator also found that "the agency sent the notice and decision letters to [Plaintiff's] email address of record and then to a second email address that [Plaintiff] provided the agency."  *Id.*

Plaintiff attributes her removal to discrimination and retaliation. *See, e.g.,* Am. Compl. at 3; Pl.'s Opp'n at 2–3; Surreply at 1. Allegedly "[t]here was unfair treatment from the immediate supervisor due to the requests for advanced leave, donated leave, [and] a reasonable accommodation," Pl.'s Opp'n at 3, and Plaintiff allegedly experienced "constant harassment from the immediate supervisor in reference to doctor's letters, the request for advanced leave, and other related topics," *id.* at 2, and "a hostile work environment due to discrimination based on disability," Am. Compl. at 3; *see* Surreply at 3. In addition, Plaintiff allegedly "experienced retaliation for filing complaints to alleviate the tension in the workplace, which resulted in failure to accept medical documentation[.]" Am. Compl. at 3; *see* Pl.'s Opp'n at 2.

Plaintiff appealed her removal to the Merit Systems Protection Board ("MSPB") on November 26, 2013, "claim[ing] that [Defendant] removed her in retaliation for her prior EEO activity and based on disability discrimination." MSPB Initial Decision at 3. An Administrative Judge held a hearing on July 14, 2015, and issued an Initial Decision on September 3, 2015, "affirming [Plaintiff's] removal from employment." *See id.* at 1.

Plaintiff filed her initial complaint in this court on May 19, 2023, and an amended complaint on December 31, 2023. She brings claims under (1) Title VII of the Civil Rights Act of 1964 ("Title VII"), *see* 42 U.S.C. § 2000e *et seq.*, (2) the Age Discrimination in Employment Act ("ADEA"), *see* 29 U.S.C. § 621 *et seq.*, and (3 the Rehabilitation Act, *see* 29 U.S.C. § 794. *See* Am. Compl. at 3. Among other relief, she demands reinstatement and back pay. *See id.*; Pl.'s Opp'n at 4–5; Surreply at 4.

## II.

### A.    Plaintiff's Challenge to her Removal is Untimely

Defendant moves to dismiss this action on the ground that Plaintiff's lawsuit is time-barred. *See* Def.'s Mot., Mem. in Support of Def.'s Mot., ECF No. 15-1, at 10–12.  An Administrative Judge's initial determination becomes final 35 days after its issuance, *see* 5 C.F.R. § 1201.113, and, unless further review is sought, a plaintiff must file her lawsuit in federal district court within 30 days, *see* 5 U.S.C. § 7703(b)(2).  In this case, the MSPB Initial Decision issued on September 3, 2015, and Plaintiff did not seek further review.  Plaintiff, however, filed this action on May 19, 2023, more than seven-and-a-half years after her time for filing suit expired.  Plaintiff has offered no explanation for the exceptional delay.  Accordingly, the court dismisses this action as untimely.

### B.    Plaintiff Fails to State Claims

Plaintiff's action must be dismissed for the additional reason that she has not stated a plausible claim under Title VII, the ADEA, or the Rehabilitation Act.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007)).

#### 1.    Plaintiff Fails to State a Title VII Claim

Generally, Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin.  *See* 42 U.S.C. §§ 2000e-2(a)(1), 2000e-16(a).  But Plaintiff does not allege facts showing that Title VII applies at all.  She does not state her race, color, religion, sex or national origin, without which there can be no plausible claim of discrimination based on membership in a protected class.  Merely citing Title VII does not state a viable discrimination claim.  *See, e.g.*, *Thweatt v. WMATA*, No. 23-cv-1185, 2024 WL 939989, at *4 (D.D.C. Mar. 5,

2024) ("Stating a claim under Title VII is not onerous, but it requires more than plaintiff's cryptic references to 'employment discrimination' and the 'Civil Rights Act of 1964.'").[3]

Plaintiff is no more successful in stating a retaliation claim under Title VII, which "bars federal agencies from retaliating against an employee because [s]he has opposed a practice made an unlawful employment practice by the statute or that [she] reasonably and in good faith believed was unlawful under the statute." *Montgomery v. McDonough*, 682 F. Supp. 3d 1, 12 (D.D.C. 2023) (quoting *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012) (citing 42 U.S.C. § 2000e-3(a)) (internal quotation marks omitted). Conclusory assertions that she "experienced retaliation for filing complaints," Am. Compl. at 2, without describing the nature of these complaints, or identifying the persons to whom she directed her complaints, or indicating when she made them, fall short of stating a viable claim.

## 2. *Plaintiff Fails to State an Age Discrimination Claim*

Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "There are two essential elements of an age discrimination claim under the ADEA: (1) that the plaintiff suffered an adverse employment action, (2) *because of* the plaintiff's age." *Montgomery v. Omnisec Int'l Sec. Servs., Inc.*, 961 F. Supp. 2d 178, 183 (D.D.C. 2013) (citing *Baloch v. Kempthorne,* 550 F.3d 1191, 1196 (D.C. Cir. 2008)) (emphasis in original). Once again, the absence of factual allegations in Plaintiff's submissions dooms the ADEA claim to failure. Plaintiff neither states her age, nor alleges facts suggesting that her age was a factor in her removal.

---

[3] Even if the court can infer from her name that Plaintiff is female, she offers no factual allegations from which to infer discrimination based on her sex.

###### 3.    *Plaintiff Fails to State Rehabilitation Act Claims*

Notwithstanding references to Title VII and the ADEA, a fair reading of the amended complaint suggests that Plaintiff's actual claims pertain to disability.  *See, e.g.*, Am. Compl. at 2 (alleging "complete incapacitation" at the time of her removal); *id.* at 3 (alleging "a hostile work environment due to discrimination based on disability"); Surreply at 3 (referring to the Americans with Disabilities Act and "the accumulation of medical documentation").[4]   The Rehabilitation Act "prohibits federal agencies from engaging in employment discrimination against disabled individuals." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (citing 29 U.S.C. § 791(b) and *Adams v. Rice*, 531 F.3d 936, 942 (D.C. Cir. 2008)).  The term "disability" means "'a physical or mental impairment that substantially limits one or more major life activities of such individual.'" *Alexander v. Washington Metro. Area Transit Auth.*, 826 F.3d 544, 546 (D.C. Cir. 2016) (quoting 42 U.S.C. § 12102(1)).[5]

Scattered throughout Plaintiff's submissions are references to treatment by specialists, *see, e.g.*, Am. Compl. at 3; Pl.'s Opp'n at 3, 5; her supposed incapacitation, *see, e.g.*, Am. Compl. at 3; her alleged inability to report to work, *see, e.g.*, Pl.'s Opp'n at 3; and having experienced "an unexpected, unexplained crisis," Surreply at 3, at the time of her removal.  But Plaintiff's submissions do not identify any particular physical or mental impairment or allege that such impairment substantially limits a major life activity.  Notably, Plaintiff testified before the MSPB that "the condition for which she is claiming disability discrimination is undiagnosed."  MSPB Initial Decision at 5.  Although Plaintiff had supplied supervisors with medical documentation

---

[4]  Plaintiff also refers to the Family Medical Leave Act ("FMLA") and leave that had been approved under FMLA. *See* Am. Compl. at 2; Surreply at 3.  Given Plaintiff's stipulations that Defendant granted her request in 2010 for "intermittent FMLA leave to undergo Vitamin B12 treatments for . . . anemia," and that anemia is not the disability relevant to her removal, MSPB Initial Decision at 4, the court presumes that Plaintiff does not raise a FMLA claim in this case.

[5]  For purposes of this discussion, the court presumes without deciding that Plaintiff exhausted her administrative remedies under the Rehabilitation Act.

regarding an injury to her hand, iron deficiency anemia, and restrictions in lifting heavy objects, none of these were the disability on which her claims are premised. *See id.* at 4–5. Her meager and vague assertions do not plausibly allege Plaintiff has a disability for purposes of the Rehabilitation Act. *See Frick v. Council of Inspectors Gen. on Integrity & Efficiency*, No. 24-cv-3222, 2025 WL 326601, at *1 (D.D.C. Jan. 29, 2025) (dismissing Rehabilitation Act claim where the complaint did not "identify the nature of [the plaintiff's] disability or otherwise establish that he is disabled within the meaning of the Rehabilitation Act"). Absent plausible allegations of disability, Plaintiff's claims of hostile work environment and failure to provide reasonable accommodation likewise fail.

Regarding retaliation, a viable claim calls for allegations that plaintiff engaged in activity protected by the Rehabilitation Act, that she suffered an adverse employment action, and that there exists a causal connection between her protected activity and the adverse employment action. *See Bowe–Connor v. Shinseki*, 923 F. Supp. 2d 1, 7–8 (D.D.C. Jan. 25, 2013) (citing *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67–69 (2006)). Plaintiff's only reference to potential protected activity is a vague statement of having filed "complaints to alleviate the tension in the workplace." Am. Compl. at 3. There are no allegations describing the circumstances or content of these complaints, or the recipients of her complaints, or any connection between these complaints and her removal from federal service.

### C.    Amendment of the Complaint is Futile

Plaintiff's motion to amend the complaint is denied as futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (identifying futility as a reason to deny leave to amend). Even if she were able to cure her pleading deficiencies with more facts, her claims still would be time-barred.

**III.**

For the foregoing reasons, the court grants Defendant's motion to dismiss, ECF No. 15, and denies Plaintiff leave to amend the complaint, ECF No. 20, and motion for appointment of counsel, ECF No. 21.

A final, appealable order accompanies this Memorandum Opinion.

Dated:  March 14, 2025

Amit P. Mehta
United States District Court Judge